# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **TIMOTHY JAMES** | **CIVIL ACTION** |
| **VERSUS** | |
| **GERALD LANE, ET AL.** | **NO.: 12-00523-BAJ-SCR** |

## <u>RULING AND ORDER</u>

Before the Court is **Defendants' Motion for Summary Judgment (Doc. 64)**, filed by Defendants Gerry Lane Enterprises, Inc. and Eric Lane[1] (collectively "Defendants"), seeking an order from this Court granting summary judgment, pursuant to Federal Rule of Civil Procedure 56, and dismissing Plaintiff Timothy James's ("James") claims. James opposes the motion. (Doc. 67.) Defendants filed a reply memorandum. (Doc. 75.) Oral argument is not necessary. Jurisdiction is proper, pursuant to 28 U.S.C. § 1331. For the reasons stated herein, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

---

[1] Defendant Eric Lane is named as a Defendant in his capacity as the Representative of the Succession of Gerald R. Lane. (Doc. 48.)

# I.     Background

## A.     James's First Amended Complaint[2]

James filed this employment discrimination lawsuit pursuant to Title VII of the Civil rights Act of 1964, 42 U.S.C. § 2000, *et seq.* ("Title VII"), and the Louisiana Employment Discrimination Law, La. R.S. § 23:301, *et seq.*[3]   James alleges that Defendants discriminated against him on the basis of his national origin, race, and sex and constructively discharged him from his sales associate position at Gerry Lane Chevrolet in Baton Rouge, Louisiana.   Specifically, James alleges that dealership owner, Gerald R. Lane, and his assistant created a hostile work environment in which James was subjected to discriminatory comments, name-calling, abusive language, intimidation, lewd comments and advances, and unwelcome physical contact.   According to James, Defendants also retaliated against him in response to his complaints of unlawful discrimination.   James's Complaint also alleges that Gerald R. Lane's actions amounted to intentional infliction of emotional distress.   James further alleges claims for assault and battery, pursuant to La. R.S. § 14:36 and La. Civ. Code art. 2315, and a claim for unpaid wages under La. Rev. Stat. § 23:631, *et seq.*

---

[2] James originally filed this lawsuit along with ten other current and former employees of Gerry Lane Enterprises, Inc.  (Doc. 1.)  Subsequently, the Court issued an order requiring the Clerk of Court to sever the claims into eleven separate lawsuits, and requiring each plaintiff to file an amended complaint.  (Doc. 4.)  Accordingly, James filed his First Amended Complaint on September 11, 2012. (Doc. 6.)

[3] A previous ruling by this Court indicated that James also asserted a claim under 42 U.S.C. § 1981.  (Doc. 94,p. 1.)  However, a review of James's complaint reveals that he seeks damages under 42 U.S.C. § 1981(a) *only*, and did not allege a claim under 42 U.S.C. § 1981.

## B. Undisputed Facts[4]

· Defendant Gerry Lane Enterprises operates as Gerry Lane Chevrolet, an automobile dealership in Baton Rouge.

· Prior to his May 2013 death, Defendant Gerald R. Lane owned a majority interest in Gerry Lane Enterprises.

· Gerald R. Lane also owned a majority interest in three other new car dealerships in Baton Rouge: Gerry Lane Cadillac, Gerry Lane Buick GMC and Gerry Lane Imports.

· During James's employment, Reynold Ankeny (Caucasian) served as a Sales Manager, reporting directly to Cedric Patton (African-American).

· Sales managers Ken Balthrop (African-American), Chad Bell (Caucasian), Cecil Overstreet (African-American) and JK Khamiss (Middle-Eastern) reported to Ankeny and directly supervised the sales force.

· The sales force typically is comprised of anywhere between twenty to thirty individuals.

· During the 2011-2012 time-frame, approximately seventy to eighty percent of the sales force was African-American.

· James is an African-American male born and raised in Baton Rouge.

· On July 6, 2010, James began working for Gerry Lane Enterprises selling cars.

· Like all employees, James received an initial orientation at the time of his hire.

· As part of this process, James received various policies governing the terms of his employment.

· Gerry Lane Enterprises was James's first position in automotive sales.

· James was hired by Todd Long, a Caucasian manager working for the Dealership at the time.

---

[4] In accordance with Rule 56.1 of the Local Rules of the United States District Court for the Middle District of Louisiana, Defendants submitted a statement of undisputed material facts. (Doc. 64-2); L.R. 56.1. In opposition, James submitted a response to Defendants' statement of undisputed material facts. (Doc. 67-2); Fed.R.Civ.P. 56(c); L.R. 56.2. Accordingly, only certain material facts are deemed admitted for purposes of this ruling and order. L.R. 56.2.

- During James's interview, Long warned him that the "sales meetings were rough" and told him that the business was "high pressure."

- James understood that the Dealership ranked at or near the top of all Chevrolet dealerships in Louisiana.

- During his employment, James was paid on commission – meaning the more vehicles he sold, the more income he earned.

- James generally averaged fewer than eight vehicles per month (which was the level Patton considers "average").

- Diane Trask, Terry Bell and Kendrick Thomas, all of whom are African-American, were generally the top-selling sales representatives during James's term of employment.

- Early in his employment, James's cell phone rang during a sales meeting.

- The Dealership's rule was that all cell phones were to be turned off during meetings.

- As a result, Gerald R. Lane terminated James's employment.

- Nevertheless, James immediately returned to work for the Dealership and apologized to Gerald R. Lane and was instructed "not to let it happen again."

- James understood that Gerald R. Lane was in his late seventies and was suffering from cancer.

- On April 20, 2012, James's counsel sent a letter to the Company and Gerald R. Lane indicating that James intended to pursue legal claims for harassment and discrimination.

- Subsequently, Terry Bell issued a written memorandum in which he instructed Offord to report any retaliation to him.

- Offord's counsel then instructed Defendants not to have any communication with Offord about any of the allegations of wrongdoing.

- James was not terminated following the receipt of notice that he intended to pursue claims against the Dealership and Gerald R. Lane.

- Gerald R. Lane slapped James on the backside on one occasion but he did not perceive Gerald R. Lane's conduct to be sexual.

- Both Gerald R. Lane and Cedric Patton had strong personalities.
- The Dealership has hired numerous African-Americans to work in sales since James's resignation.

- Gerald R. Lane provided Cedric Patton with an ownership interest in his business operations and put him in charge of the Chevrolet and Buick GMC dealerships.

- James cannot establish that Gerry Lane Enterprises failed to pay him any wages or other sums due at termination in violation of Louisiana law.

### C.     Defendants' Motion for Summary Judgment

As to the instant motion, Defendants seek an order from this Court dismissing James's claims. Defendants contend that James is precluded from asserting federal or state law discrimination claims against individual supervisors. Defendants further argue that James cannot point to sufficient evidence to establish his discrimination claims on the basis of his sex, national origin, or race. Defendants also contend that James cannot point to sufficient evidence to establish his retaliation, constructive discharge, intentional infliction of emotional distress, assault and battery, or unpaid wages claims. Accordingly, Defendants argue that summary judgment is warranted.

James concedes that relief under Title VII or the Louisiana Employment Discrimination Law is only available against an employer, and not against an individual supervisor or fellow employee. James further concedes that he cannot point to sufficient evidence to establish his unpaid wages claims. He argues, however, that there are genuine disputes of material fact that preclude summary judgment in favor of Defendants. Specifically, James contends that there are genuine disputes of material fact related to his sex, national origin and race discrimination claims, as well as his

retaliation, constructive discharge, intentional infliction of emotional distress, and assault and battery claims. Accordingly, James contends that Defendants' motion must be denied.

## II.    Standard of Review

Pursuant to Federal Rule of Civil Procedure ("Rule") 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party carries its burden of proof under Rule 56, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 323; *Liquid Air Corp.*, 37

F.3d at 1075.

In determining whether the movant is entitled to summary judgment, the court views facts in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Coleman v. Houston Independent School District*, 113 F.3d 528, 533 (5th Cir. 1997). The court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992). However, if the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor, the court must deny the motion for summary judgment. *International Shortstop, Inc.*, 939 F.2d at 1263.

## III.   Analysis

As an initial matter, as noted above, James concedes that he cannot point to sufficient evidence to establish his unpaid wages claim. James also concedes that relief under Title VII or the Louisiana Employment Discrimination Law is only available against an employer, and not against an individual supervisor or fellow employee. *Umoren v. Plano Indep. Sch. Dist.*, 457 F. Appx. 422, 425 (5th Cir. 2012); *Mitchell v. Tracer Construction Co., et al.*, 256 F. Supp. 2d 520, 525 (M.D. La. 2003); *see also* La. R.S. 23:303(A). Accordingly, Defendants' request that the Court dismiss James's unpaid wages claim as well as his federal and state law discrimination claims against Gerald R. Lane, or any other individual supervisor or fellow employee is **GRANTED**.

**A.  James's Hostile Work Environment Claim on the Basis of His Sex**[5]

"[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986).  Such a violation occurs when the plaintiff establishes he: "(1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on [sex]; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 654  (5th Cir. 2012); *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).  Here, Defendants contend that James cannot establish that the harassment complained of affected a term, condition, or privilege of his employment.

In order for harassment to affect a term, condition, or privilege of employment, it must be "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment."  *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005) (quoting *Meritor Sav. Bank*, 477 U.S. at 67).  For harassment to be sufficiently severe or pervasive to alter the conditions of

---

[5] Employment discrimination claims under Title VII and the Louisiana Employment Discrimination Law are analyzed under the same standard.  *Turner v. Kan. City Southern Ry. Co.*, 675 F.3d 887, 891 (5th Cir. 2012) (the Louisiana Employment Discrimination Law requires the same elements of proof as a Title VII hostile work environment claim); *Knapper v. Hibernia Nat'l Bank*, 49 So. 3d 898, 902 n.11 (La. Ct. App. 2010) ("Claims under the [Louisiana Employment Discrimination Law] are subject to the same analysis as discrimination claims under federal Title VII of the Civil Rights Act of 1964.").  Accordingly, James's claims under Title VII and the Louisiana Employment Discrimination Law shall be jointly addressed and analyzed.

employment, the conduct complained of must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Aryain v. Wal-Mart Stores of Tex. LP*, 534 F.3d 473, 479 (5th Cir. 2008); *see also Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22 (1993). Thus, not only must the victim perceive the environment as hostile, the conduct must also be such that a reasonable person would find it to be hostile or abusive. *Harris*, 510 U.S. at 21-22. To determine whether the victim's work environment was objectively offensive, courts consider the totality of the circumstances, including: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating; (4) whether it interferes with an employee's work performance. *Id.* at 23.

In his First Amended Complaint, James alleges that Gerald R. Lane's personal assistant Wayne Garafolo "is openly homosexual and constantly makes lewd sexual innuendo and advances at the sales staff including Plaintiff [ ] by making inappropriate comments about sex and penises." (Doc. 6, p. 5.) When questioned about his sexual harassment claim by counsel for Defendants testified as follows:

Q:    Okay. Did anybody else sexually harass you when you worked there?

A:    Wayne Garafola, he would - when I'd walk - when I'd walk across the showroom floor he would say, Tim, you're hanging to the left.

Q:    And how many times did Mr. Garafola make that comment [to you]?

A:    He would make it - it wasn't, you know, maybe once a month, you know, something like that. He would say, Tim, you're hanging to the left.

(Doc. 67-3, pp. 38-39.) A review of James's deposition reveals that this is the only

comment or action by Garafola that he could recall.[6]  (Doc. 64-6, pp. 100-105; Doc. 67-3, pp. 38-41, 43-44).

In opposition to the motion, James contends that Garafola also called him by the "pet name" "Thunder," and that such "pet name" had a sexual connotation.  However, James's contention is undermined by his own deposition testimony:

> Q:  Who made the nickname up?
>
> A:  What happened was, I was talking to Avery about - me and Avery was joking around and Avery made it known.  Avery started talking to everybody about it and then that's - that's what they started saying.
>
> . . .
>
> Q:  Did it have a sexual meaning to it?
>
> A:  Sexual meaning, not to me . . .

(Doc. 75-1, pp. 31-32.)

Simply put, James has failed to point to sufficient evidence from which a jury could conclude that the harassment complained of was severe or pervasive enough to affect a term, condition, or privilege of his employment.  James does not point to evidence that Garafola made physical or sexual advances toward him, as is characteristic of many hostile work environment claims.  Further, James has failed to point to evidence to establish that the harassment complained of interfered with his work performance.

---

[6] James also points to the deposition testimony of his coworkers, who generally testified about Garafola's actions towards male employees or other comments allegedly made by Garafola to James or other male employees.  *See, e.g.*, Doc. 67-5, p. 24.  However, a review of James's deposition reveals that he did cite any of these alleged actions or comments as examples of harassment by Garafola.  *See* Docs. 64-6, 67-3, 75-1.  Further, James failed to cite, nor has the Court identified, binding case law that would permit the Court to consider evidence that the plaintiff *in this litigation* does not even recall.  Accordingly, such evidence shall not be considered.

When compared to cases in which courts in this Circuit have denied summary judgment or afforded relief, Garafola's comments were simply not frequent or serious enough to alter James's work environment. *Compare Hockman v. Westward Communs., LLC*, 407 F.3d 317, 328-29 (5th Cir. 2004) (finding that the defendant's actions of making one remark to the plaintiff about another employee's body, slapping the plaintiff on her behind with a newspaper, grabbing or brushing against the plaintiff's breast or behind, attempting to kiss the plaintiff on one occasion, and standing in the door of the women's bathroom while the plaintiff was washing her hands did not qualify as a hostile work environment), *with Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 524 (5th Cir. 2001) (finding that repeated sexual advances in the face of adamant refusals by the plaintiff were sufficiently extreme to qualify as a hostile work environment).

Title VII is intended only to prohibit and prevent conduct "that is so severe and pervasive that it destroys a protected class member's opportunity to succeed in the workplace." *Id.* (internal quotation marks and citation omitted). Garafolo's comments simply do not approach the level of "extreme conduct that would prevent [James] from succeeding in the workplace." *Id.* Accordingly, Defendants' request that the Court dismiss James's claim that he was subjected to a hostile work environment claim on the basis of his sex is **GRANTED**.

### B.  James's Hostile Work Environment Claim on the Basis of His Race

A plaintiff may establish a Title VII violation based on race discrimination creating a hostile work environment. *Ramsey*, 286 F.3d at 268. "The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of

racial discrimination." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To establish a prima facie case, the plaintiff must prove that: (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[7] *Ramsey*, 286 F.3d at 268.

In opposition to the motion, James points to his deposition, in which he testified that Gerald R. Lane told him "several times a week" that he "could get a trained monkey to sell cars." (Doc. 67-3, pp. 17-19.) According to James, Gerald R. Lane did not make this statement to white employees. (Doc. 67-3, p. 20.) James also testified that Gerald R. Lane "said he wanted to cut all the trees on the lot because we looked like a bunch of monkeys under the trees" "more than ten" times. (Doc. 64-6, p. 78; Doc. 67-3, pp. 21.) When questioned about whether Gerald R. Lane referred to white employees as "monkeys" when they congregated under the trees, James testified that he "[didn't] remember [Gerald R. Lane] using the word monkey when a white employee was under the tree." (Doc. 64-6, p. 79.) James further testified that sometime in 2011, Gerald R. Lane told James (and the African American employees with whom he was standing) that "if [he] wanted to see the ghetto, [he] would look across the street." (Doc. 67-3, p. 27.) According to James, when one of his African American coworkers questioned Gerald R.

---

[7] Where the harassment is allegedly committed by a supervisor with immediate authority over the harassed employee, the plaintiff need only satisfy the first four elements of the *prima facie* case. *Celestine*, 266 F.3d at 353.

Lane about his statement, Lane responded, "if you think I'm being racist, you're damn right I'm being racist. . . I've earned the right to be racist." (Doc. 67-3, p. 27.) According to James, sometime in 2012, Gerald R. Lane also referred to an African American finance manager's Native American heritage as being from the "nigga-ho tribe" during a sales meeting. (Doc. 67-3, p. 13.) James further testified that Gerald R. Lane touched his face, "three times . . . at most", to ensure that he was clean shaven, but would "look[ ] but kee[p] moving" when examining white employees. (Doc. 64-6, p. 58.) When asked whether Gerald R. Lane ever touched the faces of white employees to ensure that they were clean shaven, James responded, "[n]ot to my knowledge." (Doc. 64-6, p. 58.) James also testified that Gerald R. Lane referred to African American sales employees as "son of a bitch," "bitch," and "motherfuckers." (Doc. 67-3, pp. 11-12.) James failed to point the Court to any other portions of his deposition in which he testified about examples of race-based harassment.

The Court finds that James has failed to present sufficient evidence to create a genuine dispute of material fact from which a jury could conclude that the harassment complained of affected a term, condition, or privilege of his employment. The record before the Court contains evidence of incidents that reasonably could be characterized as race-based: Gerald R. Lane's reference to African American employees as "monkeys"; Gerald R. Lane's comparison of James to a "trained monkey"; Gerald R. Lane's reference to James and other African American employees standing in a group as the "ghetto"; and Gerald R. Lanes' reference to an African American finance manager's Native American heritage as the "nigga-ho tribe." However, as reprehensible as such comments are, they

do not rise to the level of severity or pervasiveness required to support a hostile work environment claim.

The mere utterance of an ethnic or racial epithet that engenders offensive feelings in an employee, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. *See Meritor*, 477 U.S. at 67; *Lauderdale v. Tex. Dep't of Criminal Justice, Inst. Div.*, 512 F.3d 157, 163 (5th Cir. 2007). Rather, the plaintiff must establish that the harassment complained of was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment. *Harris*, 510 U.S. at 21.

Here, James failed to present any evidence that the harassment complained of involved physically threatening or humiliating conduct. According to James, Gerald R. Lane touched his face ensure he was clean shaven "three times . . . at most" over a two-year period. While the terms "son of a bitch," "bitch," and "motherfucker" are offensive, nothing in the record suggests such words should be construed as having racial connotations. Further, James failed to present evidence that Gerald R. Lane used the words "nigga" or "nigger" regularly. Rather, Gerald R. Lane's "nigga ho tribe" comment was an isolated remark that was not directed at James. While Gerald R. Lane's use of the terms "monkey" and "ghetto" were "racially inappropriate,"[8] evidence of racially inappropriate comments, without more, is not sufficiently severe.

More importantly, James has failed to offer sufficient evidence concerning the

---

[8] *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007) (recognizing that a supervisor's reference to inner-city children as "ghetto children" was "perhaps racially inappropriate").

objective effect of the harassment on his work performance.  *Harris*, 510 U.S. at 23.

> Even when a hostile environment is shown, a plaintiff must establish that the workplace environment had the effect of altering the terms and conditions of his employment.  Central to the court's inquiry into a hostile environment claim is whether the alleged harasser's actions have undermined the victim's workplace competence, discouraged him from remaining on the job, or kept him from advancing in his career.  Title VII is intended only to prohibit and prevent conduct 'that is so severe and pervasive that it destroys a protected class member's opportunity to succeed in the workplace.'

*Sparks v. Alrod Enters.*, No. 3:00-CV-2110-L, 2003 U.S. Dist. LEXIS 7095, at *17 (N.D. Tex. Apr. 28, 2003) (citing cases).  Here, James does not address, let alone present evidence to establish that, Gerald R. Lane's conduct interfered with his work performance.

As such, the Court finds that James has failed to present sufficient evidence to create a dispute of material fact as to whether the harassment complained of was severe or pervasive enough to affect a term, condition, or privilege of his employment.  *Compare Walker v. Thompson*, 214 F.3d 615, 619-22 (5th Cir. 2000) (holding that a hostile work environment claim survived summary judgment where evidence demonstrated years of inflammatory racial epithets, including "nigger" and "little black monkey"), *with Johnson v. TCB Constr. Co.*, 334 F. Appx. 666, 671 (5th Cir. 2009) (finding insufficient evidence to establish a racially hostile work environment where a supervisor's comment that the plaintiff was just "like a damn nigger" was isolated; there was no evidence of the objective effect of that comment on the plaintiff's work performance; and although there was evidence that the supervisor frequently used the term "nigger," those other comments were not uttered in the plaintiff's presence and there was no evidence that they affected

the plaintiff's job).  Accordingly, Defendants' request that the Court dismiss James's hostile work environment claim on the basis of his race is **GRANTED**.

### C.    James's Hostile Work Environment Claim on the Basis of His National Origin

A plaintiff may establish a Title VII violation based on national origin discrimination creating a hostile work environment.  To establish a prima facie case, the plaintiff must prove that: (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on national origin; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[9]  *Ramsey*, 286 F.3d at 268 (citations omitted).  Here, Defendants contend that James failed to allege a separate and distinct national origin discrimination claim.  James failed to present any argument in opposition to Defendants' argument.

National origin, though often confused with race, refers to "the country where a person was born, or, more broadly, the country from which his or her ancestors came." *Espinoza v. Farah Mfg. Co., Inc.*, 414 U.S. 86, 88 (1973).  Accordingly, the EEOC Guidelines on Discrimination Because of National Origin define national origin discrimination "broadly as including, but not limited to, the denial of equal employment opportunity because of an individual's, or his or her ancestor's, place of origin; or because

---

[9] As mentioned above, where the harassment is allegedly committed by a supervisor with immediate authority over the harassed employee, the plaintiff need only satisfy the first four elements of the *prima facie* case.  *Celestine*, 266 F.3d at 353.

an individual has the physical, cultural or linguistic characteristics of a national origin group." 29 C.F.R. § 1606.1. During his deposition, James testified that he considers his national origin to be "African American." (Doc. 64-6, p. 96.)

James does not dispute that he was born and raised in Baton Rouge, Louisiana. (Doc. 67-2, p. 2.) Further, nothing in the record suggests that James's national origin is *not* American. Indeed, James failed to present any evidence regarding his or his ancestor's place of origin.

During his deposition, James testified that he considers his race *and* national origin to be African American. (Doc. 64-6, p. 96.) Accordingly, the Court finds that James's national origin discrimination claim is not a separate and distinct claim. As such, an analysis of James's national origin claim would merely duplicate the Court's analysis of his race claim. *See Bullard v. OMI Georgia, Inc.*, 640 F.2d 632, 634 (5th Cir. 1981) (in some contexts, national origin and racial discrimination are "so closely related . . . as to be indistinguishable.") When viewing the facts, it is clear that James is alleging racial discrimination, and that his claims of discrimination on the basis of national origin are merely superfluous. Accordingly, Defendants' request that the Court dismiss James's claim that he was subjected to a hostile work environment claim on the basis of his national origin is **GRANTED**.

### D.     James's Retaliation Claim

Title VII contains an anti-retaliation provision that "prohibits an employer from discriminating against an employee or job applicant because that individual opposed any practice made unlawful by Title VII." *Burlington N. & Santa Fe Ry. Co. v. White*, 548

U.S. 53, 56 (2006) (internal quotations, citation, and alterations omitted). A plaintiff establishes a *prima facie* case of retaliation by showing: (1) he engaged in a protected activity; (2) an adverse employment action occurred; and (3) there was a causal link between the protected activity and the adverse employment action. *Hernandez*, 670 F.3d at 657 (citing *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 523 (5th Cir. 2008)).

In support of the motion, Defendants argue that James cannot point to sufficient evidence to establish that an adverse employment action occurred. An adverse employment action is one that "a reasonable employee would have found . . . [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 68 (2006); *Hernandez*, 670 F.3d at 657.

In opposition, James does not address Defendants' argument that no adverse employment action occurred. Instead, James points to his deposition, in which he testified that, after he filed his Equal Employment Opportunity Commission Charge of Discrimination, Gerald R. Lane made the following comments to him during a sales meeting and on the showroom floor: :(1) "I'm worth 30 million motherfucking dollars and you're going to be . . . you're going to be old and gray before you get a dime of me" (Doc. 67-3, p. 46); (2) "standing up there and trying to get my money, you think you're going to be a millionaire" (Doc. 67-3, p. 47). James also points to his testimony regarding a verbal altercation between he, three African American coworkers, and Gerald R. Lane, during which Lane allegedly verbally attacked James and his coworkers. (Doc. 67-3, pp. 49-52.) James failed to present any other evidence.

The Court finds that he has not pointed to sufficient evidence to create a dispute of material fact as to the second prong of a *prima facie* case. Even viewing the facts in the light most favorable to James, the Court finds that he failed to identify an act by Gerald R. Lane, or any other employee, that would have dissuaded a reasonable employee from making or supporting a charge of discrimination. *See King v. Louisiana*, 294 F. Appx. 77, 85 (5th Cir. 2008) (holding that "allegations of unpleasant work meetings, verbal reprimands, improper work requests and unfair treatment do not constitute adverse employment actions as . . . retaliation")*; Grice v. FMC Techs., Inc.*, 216 F. Appx. 401, 407 (5th Cir. 2007) (holding that unjustified reprimands are considered "trivial" and not materially adverse in the retaliation context). Indeed, James has failed to cite to any binding case law that would require the Court to conclude otherwise. Accordingly, Defendants' request that the Court dismiss James's retaliation claim is **GRANTED**.

### E. James's Constructive Discharge Claim

"Constructive discharge occurs when an employee has quit [his] job under circumstances that are treated as an involuntary termination of employment." *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004). To succeed on his constructive discharge claim, James must show "working conditions . . . so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Hypolite v. City of Houston*, 493 Fed. Appx. 597, 607-608 (5th Cir. 2012) (quoting *Nassar v. Univ. of Tex. Sw. Med. Ctr.*, 674 F.3d 448, 453 (5th Cir. 2012)). There must be "a greater severity of pervasiveness or harassment than the minimum required to prove a hostile work environment." *Id.* (quoting *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 444

(5th Cir. 2011)).  Therefore, courts in the Fifth Circuit consider aggravating factors including: (1) demotion; (2) reduction in salary; (3) reduction in job responsibility; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.  *Id.* (citing *Nassar*, 674 F.3d at 453).  Here, Defendants argue that James cannot point to sufficient evidence to establish these factors.

In opposition, James argues that he felt compelled to resign after a verbal alteration with Gerald R. Lane.  In support of this argument, James points to his deposition, during which he testified about the verbal altercation between he, three African American coworkers, and Gerald R. Lane.  (Doc. 67-3, pp. 49-52.)  According to James, he and his coworkers decided to quit because it "[didn't] look like things [at the dealership] [were] going to get any better."  (Doc. 64-6, p. 117.)  James also contends that Gerald R. Lane kept a gun in his vehicle, and that he "had no choice but to leave or risk bodily harm."  (Doc. 67, p. 21; Doc. 67-3, pp. 30-31.)  However, James fails to point to evidence that Gerald R. Lane physically attacked or threatened to physically attack James, or that Gerald R. Lane displayed his gun on the day of the verbal altercation, or that Gerald R. Lane threatened to shoot James.

As noted above, to survive summary judgment, James must present evidence of working conditions even more egregious than those required to establish a hostile working environment.  *Hypolite*, 493 Fed. Appx. at 607-608.  During his deposition, James

confirmed that he was not terminated, his compensation was not reduced, he was not suspended or demoted, and his job duties were not changed. (Doc. 64-6, pp. 111-112.) Thus, the only factor James can rely on to meet the reasonable employee test is "badgering harassment, or humiliation by the employer calculated to encourage the employee's resignation." *Id.* While Gerald R. Lane's comments were unprofessional and boorish, such comments do not amount to conduct so intolerable that a reasonable employee would feel compelled to resign. Further, James's subjective belief that he "had to leave or risk bodily harm," without more, is insufficient to meet the extremely high standard for a constructive discharge claim. *Compare Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 640 (7th Cir. 2009) (concluding that evidence that African-American plaintiff's co-workers repeatedly displayed a noose and threatened violence qualifies as "egregious for purposes of constructive discharge"), *and Taylor v. W. & S. Life Ins. Co.*, 966 F.2d 1188, 1190-91, 1199 (7th Cir. 1992) (concluding that considerable evidence supported the district court's finding of constructive discharge where the plaintiff's boss constantly made racist comments, brandished gun, took photograph of himself holding gun to the plaintiff's head, and passed that photo around office), *with Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 991-92 (5th Cir. 2008) (employee failed to meet the reasonable employee test where she claimed that she was not compensated appropriately, not given career development opportunities, not allowed to accrue compensatory time, harassed and discriminated against, and "excluded from prestigious retreats"). Indeed, James has failed to cite to any binding case law that would require the Court to conclude otherwise.

Accordingly, Defendants' request that the Court dismiss James's constructive discharge claim is **GRANTED**.

### F. James's Assault and Battery Claims

In Louisiana, a battery is "[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact . . ." *Landry v. Bellanger*, 851 So. 2d 943, 949 (La. 2003) (citing *Caudle v. Betts*, 512 So. 2d 389, 391 (La. 1987)). According to the Louisiana Supreme Court, the defendant's intention need not be malicious nor need it be an intention to inflict actual damage. *Id.* (citing *Caudle*, 512 So. 2d at 391). It is sufficient if the defendant intends to inflict either a harmful or offensive contact without the other's consent. *Id.* (citing *Caudle*, 512 So. 2d at 391). In contrast, "assault is an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery." La. R.S. § 14:36.

Here, James argues that Gerald R. Lane intended to touch him on his face and buttocks, and that the touching was offensive. In support of his argument, James points to his deposition testimony, in which he testified that Gerry R. Lane "did slap me on my behind once." (Doc. 67-3, p. 35.) James further testified that Gerald R. Lane touched his face, "three times . . . at most", to ensure that he was clean shaven. (Doc. 64-6, p. 58.) According to James, he "flinched" when Gerald R. Lace touched his face and "wished that [Gerald R. Lane] didn't" touch his face. (Doc. 67-3, p. 10; Doc. 64-6, p. 61.)

In support of the motion, Defendants argue that James cannot point to sufficient evidence to establish that Gerald R. Lane intended to make a harmful or offensive contact. Thus, Defendants argue James's battery claim must be dismissed. However, the

defendant need not form the intention that his actions be harmful or offensive. *Molette v. City of Alexandria*, No. CV04-0501-A, 2005 U.S. Dist. LEXIS 44043, at *23 (W.D. La. Sept. 30, 2005) (citing Landry, 851 So.2d at 949). Rather, in the tort liability analysis, the element of intent is satisfied if the actor desires to "bring about a result which will invade the interests of another in a way that the law forbids. The defendant may be liable although intending nothing more than a good-natured practical joke, or honestly believing that the act would not injure the plaintiff, or even though seeking the plaintiff's own good." *Caudle*, 512 So. 2d at 391. Viewing the facts in the light most favorable to James, the Court finds that he has pointed to sufficient evidence to establish a dispute of material fact from which a jury could conclude that a battery was committed. Accordingly, Defendants' request that the Court dismiss James's battery claim must be denied.

As it relates to his assault claim, James must establish three elements: (1) "an intent to scare mental element"; (2) "conduct by defendant of the sort to arouse reasonable apprehension of bodily harm"; and (3) "the resulting apprehension on the part of the victim." *State v. Blaise*, 504 So.2d 1092 (La. App. 5th Cir. 1987). Here, James failed to address, let alone present any evidence to establish these elements. As such, Defendants' request that the Court dismiss James's assault claim must be granted.

Accordingly, Defendants' request that the Court dismiss James's assault and battery claims is **GRANTED IN PART** and **DENIED IN PART**.

### G. James's Intentional Infliction of Emotional Distress Claim

In Louisiana, in order to recover for intentional infliction of emotional distress, a plaintiff must establish: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). In support of the motion, Defendants argue that James cannot point to sufficient evidence to establish these elements.

In opposition, James failed to point the Court to specific evidence to support each prong of his intentional infliction of emotional distress claim. Instead, James generally argues that where there is a question as to whether there was pattern of harassment, summary judgment is inappropriate. However, James's bare assertion that there are genuine disputes of material fact, without more, is insufficient. Even assuming, *arguendo*, that the evidence in the record establishes that Gerald R. Lane's conduct was extreme and outrageous, James has failed to point the Court to any evidence whatsoever to establish that the emotional distress suffered by him rises to the level of severe distress required to support such a claim, or that Gerald R. Lane desired to inflict severe emotional distress upon James or knew that severe emotional distress would be certain or substantially certain to result from his conduct toward James. Accordingly, the Court finds that James has failed to present sufficient evidence to establish a dispute of material fact from which a jury could conclude that Gerald R. Lane is liable for

intentional infliction of emotional distress. As such, Defendants' request that the Court dismiss James's intentional infliction of emotional distress claim is **GRANTED**.

### H. James's Remaining State Law Claim for Battery

In the absence of a surviving federal claim, and in the interest of fairness to all parties involved and judicial economy, the Court declines to exercise jurisdiction over James's remaining state law claim, and will remand this matter to the Nineteenth Judicial District Court, Parish of Baton Rouge, State of Louisiana. *Enochs v. Lampasas Cty.*, 641 F.3d 155, 161 (5th Cir. 2011); *Beiser v. Weyler*, 284 F.3d 665, 675 (5th Cir. 2002) (noting that where "no other grounds for federal jurisdiction exist, the court must ordinarily remand the case back to state court"); *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999) (citation omitted) (the "general rule" in the Fifth Circuit "is to decline to exercise jurisdiction over pendent state law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial.").

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that **Defendants' Motion for Summary Judgment (Doc. 64)** is **GRANTED IN PART** and **DENIED IN PART**.

- Defendants' request that the Court dismiss James's claim under La. R.S. § 23:631 is **GRANTED**. Accordingly, James's claim under La. R.S. § 23:631 is **DISMISSED**.

- Defendants' request that the Court dismiss James's federal and state law discrimination claims against Gerald R. Lane, or any other individual supervisor

or fellow employee, is **GRANTED**. Accordingly, James's federal and state law discrimination claims against Gerald R. Lane, or any other individual supervisor or fellow employee, are **DISMISSED**.

- Defendants' request that the Court dismiss James's claim that he was subjected to a hostile work environment claim on the basis of his sex is **GRANTED**. Accordingly, James's hostile work environment claim on the basis of his sex is **DISMISSED**.

- Defendants' request that the Court dismiss James's hostile work environment claim on the basis of his race is **GRANTED**. Accordingly, James's hostile work environment claim on the basis of his race is **DISMISSED**.

- Defendants' request that the Court dismiss James's hostile work environment claim on the basis of his national origin is **GRANTED**. Accordingly, James's hostile work environment claim on the basis of his national origin is **DISMISSED**.

- Defendants' request that the Court dismiss James's retaliation claim is **GRANTED**. Accordingly, James's retaliation claim is **DISMISSED**.

- Defendants' request that the Court dismiss James's constructive discharge claim is **GRANTED**. Accordingly, James's constructive discharge claim is **DISMISSED**.

- Defendants' request that the Court dismiss James's assault claim is **GRANTED**. Accordingly, James's assault claim is **DISMISSED**.

- Defendants' request that the Court dismiss James's intentional infliction of emotional distress claim is **GRANTED**. Accordingly, James's intentional infliction of emotional distress claim is **DISMISSED**.

**IT IS FURTHER ORDERED** that James's battery claim is **DISMISSED WITHOUT PREJUDICE** and that this matter is **REMANDED** to the Nineteenth Judicial District Court, Parish of Baton Rouge, State of Louisiana for consideration of James' remaining state law claim.

Baton Rouge, Louisiana, this 25th day of September, 2014.

_____
**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**